# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

BOBBY KENDALL ANDERS,              )
                                   )
    Plaintiff,                     )
                                   )
v.                                 )   Case Number: 5:13-cv-01942-JHE
                                   )
CAROLYN W. COLVIN, ACTING          )
COMMISSIONER OF SOCIAL             )
SECURITY ADMINISTRATION,[1]        )
                                   )
    Defendant.                     )

## MEMORANDUM OPINION[2]

    Plaintiff Bobby Kendall Anders ("Anders") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Anders timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

---

[1] Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013. See http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security."). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin in the case caption above.

[2] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 16).

## I. Factual and Procedural History

Anders was a forty-five year old male on the date of last insured and forty-seven years old on the date of the ALJ's decision. (Tr. 10, 23, 24, 56). Anders has at least a high-school education, is able to communicate in English, and previously worked as a cleaner. (Tr. 22-23).

Anders filed an application for a period of disability and DIB on November 3, 2010, alleging an onset date of July 11, 2009. (Tr. 20, 56, 128). The Commissioner denied Anders' application, and Anders requested a hearing before an ALJ. (Tr. 56, 61-63, 67-68). After a hearing, the ALJ denied Anders' claim on December 31, 2010. (Tr. 10-24). Anders sought review by the Appeals Council, but it declined the request on August 28, 2013. (Tr. 1-4). On that date, the ALJ's decision became the final decision of the Commissioner. On October 21, 2013, Anders initiated this action. (*See* doc. 1).

## II. Standard of Review[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but

---

[3]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

---

[4]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2013.

(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Anders last met the insured status requirements of the Social Security Act on December 31, 2010,[5] and that Anders did not engage in substantial gainful activity from the alleged onset date of July 11, 2009, through the date of last insured. (Tr. 12). At Step Two, the ALJ found Anders has the following severe impairments: degenerative disc disease of the lumbar spine with a remote history of a laminectomy, history of Chiari malformation and aneurysm repair, and chronic pain. (*Id.*). At Step Three, the ALJ found

---

[5] To be eligible for DIB, a claimant must show he became disabled prior to the expiration of his disability insured status. *See* 42 U.S.C. §§ 416(i)(3); 423(a), (c); 20 C.F.R. pt. 404.101, 404.130, 404.131; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

4

Anders does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* At 12-13).

Before proceeding to Step Four, the ALJ determined Anders' residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Anders has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) except he can frequently lift and carry ten pounds and occasionally twenty pounds. (Tr. 13). He can occasionally push and pull with his right upper extremity. (*Id.*). He can frequently push and pull with his left upper extremity. (*Id.*). With his right upper extremity, he can frequently reach, handle, and finger. (*Id.*). He cannot climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. (*Id.*). He should avoid concentrated exposure to extreme heat and cold, wetness, humidity, and vibrations. (*Id.*). The claimant should avoid all exposure to unprotected height and dangerous, moving, and unguarded machinery. (*Id.*).

At Step Four, the ALJ determined, through the date last insured, Anders was capable of performing his past relevant work as a cleaner. (Tr. 22). Regardless, at Step Five, the ALJ determined, based on Anders' age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Anders could perform. (Tr. 23). Therefore, the ALJ determined Anders has not been under a disability during the relevant timeframe and denied Anders' claim. (Tr. 24).

## V. Analysis

### A.   Introduction

Although the court may only reverse a finding of the Commissioner if it is not supported

by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Anders failed to demonstrate a disability and the ALJ applied the proper standards to reach this conclusion. Anders' only contention is the ALJ erred because he failed to properly evaluate the credibility of Anders' complaints consistent with the Eleventh Circuit pain standard. (Doc. 11 at 3-13). Specifically, Anders contends the ALJ's articulated reasons for discrediting Anders' testimony are not supported by substantial evidence and are not adequate as a matter of law. (*Id.*at 5).

### B. The ALJ Properly Applied the Eleventh Circuit Pain Standard, and There is Substantial Evidence to Support His Decision

When a claimant attempts to establish disability based on subjective complaints, including pain, he must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996-374186. If the claimant establishes he has an impairment that could reasonably be expected to produce his alleged symptoms, then the intensity and persistence of his alleged symptoms and their effect on his work must be evaluated. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ considers all evidence, objective and

subjective.  *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 364186 at * 4-5.  The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence.  *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 96-7p, 1996 WL 364186 at * 4-8.  If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so."  *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002).  In articulating his reasons, the ALJ is not required to refer to every piece of evidence, so long as the decision "is not a broad rejection which is not enough to enable the [court] to conclude that the ALJ considered [the] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

The ALJ properly evaluated Jones' subjective complaint of pain in accordance with the regulatory criteria, Eleventh Circuit precedent, and SSR 96-7p.  (*See* tr. 20-22).  The ALJ found Anders satisfied neither prong of part two of the standard because (a) the objective evidence did not conform either to the severity of his alleged symptoms arising from his medically documented conditions and (b) those conditions could not reasonably be expected to give rise to the symptoms alleged, (*id.*).

The medical records do not indicate Anders' alleged pain and other symptoms were as limiting as he claimed from his alleged onset date of July 11, 2009, through his date of last insured, December 31, 2010.  (Tr. 20-22).  The ALJ discussed Anders' allegations of pain, noting Anders' counsel argued Anders had chronic pain in his back due to laminectomy surgery and syndrome and that Anders' headaches from his aneurysm never went away.  (Tr. 20).  The ALJ further noted that Anders testified he had pain in his back caused by surgery, had headaches most of the time that rarely went away, and had pain without medication at a level of seven or

7

eight and with medication at a level of five to six.  (*Id.*).   The ALJ noted Anders alleged side effects from his Lortab and headache medicine. (*Id.*).  The ALJ discussed Anders' testimony he could barely use his right hand, was unable to grip with his right hand, was unable to button buttons, and had to use his left hand for everything.  (*Id.*).   The ALJ acknowledged Anders testified he could stand for only approximately ten minutes and sit for fifteen minutes, was able to walk twenty to thirty yards, was unable to bend down or crawl on his hands or knees, could not squat, and could kneel on his left knee but has problems getting up. (*Id.*).  After reviewing the medical evidence, (*see* tr. 20-22), the ALJ found Anders' allegations and contentions regarding the nature and severity of his impairment-related symptoms and functional limitations only *partially* credible, (tr. 20).

Regarding Anders' alleged back pain, the ALJ found Anders' subjective complaints were inconsistent with the medical evidence of record.  The ALJ noted and reviewed Anders' extensive treatment history with Brian R. Carter, M.D. throughout 2009, 2010, and 2011.  (Tr. 20, 290-354).  The ALJ recognized Anders underwent several physical examinations where Dr. Carter noted Anders had mild to moderate tenderness in his lumbar and cervical spine, but otherwise was normal. (Tr.  20-21, 290, 292, 294, 296, 298, 300, 302, 300).  Specifically, the ALJ pointed to a May 4, 2009 follow-up appointment with Dr. Carter (who had been treating Anders since September 28, 2004) where Anders reported problems with chronic back and leg symptoms, generally worse on the right. (Tr. 15, 306; *see* tr. 14, 348-51). Despite this report, Dr. Carter noted Anders was tolerating his pain medications fairly well, and Anders reported no new problems or medication side effects.  (Tr. 15, 306).   A physical examination at this appointment revealed tenderness across the lumbar spine and "some decreased range of motion with flexion/extension," but otherwise the examination was normal.  (Tr. 15, 306).   Dr. Carter

diagnosed Anders with a history of previous laminectomy and chronic back and radicular pain. (Tr. 15, 307). Dr. Carter continued Anders on the same medication regimen because he "seem[ed] to be doing fairly well with that." (Tr. 15, 307). He advised Anders to follow-up in three months, or sooner if there were any new problems or questions. (Tr. 15, 305).

On July 30, 2009, Anders saw Dr. Carter for a follow-up visit, and Dr. Carter noted Anders last MRI in 2004 revealed post-surgical changes and a little bit of degenerative change, but no major recurrent herniation or stenosis. (Tr. 15, 304). As the ALJ discussed, Dr. Carter examined Anders, and, with the exception of some reported tenderness across his lower lumbosacral segments and a little bit of decreased range of motion with flexion/extension, his examination was normal. (Tr. 15, 304). Dr. Carter again noted Anders' diagnosis of a history of previous laminectomy and chronic low back and radicular pain and wrote Anders a prescription for Medrol Dosepak for his "mild flare-up" and refilled his Lortab prescription. (Tr. 15, 304).

The ALJ continued to detail Anders' treatment history with Dr. Carter. (Tr. 15-16). The ALJ discussed Anders' October 26, 2009 follow-up visit with Dr. Carter for chronic back and leg pain, noting Dr. Carter's examination again revealed only some diffuse tenderness across the lower lumbosacral segments. (Tr. 15, 302). While Anders' straight leg raise and slump test produced some increased back complaints, the remainder of the examination was normal. (Tr. 15, 302). Anders' motor strength was rated 5/5, and there were no neurological deficits noted. (Tr. 15, 302). Dr. Carter scheduled Anders for a post-MRI follow-up to see if there were any new problems. The ALJ specifically discussed an October 28, 2009 MRI that revealed post-surgical change at L4-5 on the right, diffuse spondylitic changes, but no severe level of critical central or neural foraminal narrowing. (Tr. 15, 21, 301). Dr. Carter diagnosed Anders with post-laminectomy at L4-5, discogenic changes at L4-5 and LS-S1, and chronic lumbar radicular

9

pain. (Tr. 15, 301). Dr. Carter explained he saw no new major disc herniation and suggested a repeat epidural. (Tr. 15, 21, 301).

The ALJ further noted Anders follow-up visit with Dr. Carter on January 11, 2010, for chronic back pain, and Dr. Carter's notes that Anders had some diffuse tenderness across the lover lumbosacral segments, but otherwise was normal. (Tr. 16, 298). Dr. Carter noted no neurological deficits. (Tr. 16, 298). Dr. Carter again diagnosed post-laminectomy syndrome and chronic back and radicular pain and offered an epidural injection. (Tr. 16, 299). Dr. Carter advised Anders to follow-up in three months. (Tr. 299).

The ALJ continued to discuss Anders' visits with Dr. Carter during 2010 and early 2011. (Tr. 17-18). On April 27, 2010, Anders was having some "seizure type" activity and went to the hospital where he was diagnosed with Chiari I malformation at the base of his cervical spine. (Tr. 17, 296). Anders also had a small MCA aneurysm on the right. (Tr. 296). Anders saw Dr. Pickett on June 16, 2010, complaining of ongoing headaches and right upper extremity pain. (Doc. 207-208). On June 28, 2010, Anders underwent a decompressive suboccipital craniectomy and C1 laminectomy and partial C2 laminectomy for decompression for this Chiari malformation. (Doc. 205).

In July 2010, Dr. Carter noted Anders underwent surgery for the Chiari I malformation and noted Anders was doing "much better" and his back and leg pain were relatively stable. (Tr. 17, 294). Dr. Carter noted Anders was still experiencing occasional headaches, but overall seemed to be improving. (Tr. 294). As the ALJ noted, on each of Anders' visits with Dr. Carter, Dr. Carter observed only mild tenderness across the lower lumbosacral segments, but otherwise his examinations were normal. (Tr. 17-18, 290, 292, 294, 296). Anders' motor strength was rated 5/5, and there were no neurological deficits noted. (Tr. 17-18, 290, 292, 294).

Anders' contends he is alleging disability primarily based on "chronic moderately severe back pain" [and] "[i]t is not [his] contention that [he] is disabled based on the symptoms from Chari [sic] 1 malformation or his aneurysm." (Doc. 11 at 11).

On October 25, 2010, Dr. Carter noted Anders was fairly stable on his current medication regime. (Tr. 18, 292). Anders stated he was having a little trouble with his right upper extremity where it drew up occasionally,[6] but he was not really noting any weakness. (Tr. 18, 292). Dr. Carter continued to proscribe Lortab and added Robaxin. (Rr. 18, 203). On January 20, 2011, Dr. Carter noted he saw no focal neurological issues, so he recommended continued observation. (Tr. 18, 291).

Anders' allegations his condition worsened in October and November 2009, (doc. 11 at 8 (citing tr. 300-303)), does not undermine the ALJ's interpretation of the evidence. The ALJ properly noted Anders symptoms improved after his laminectomy, which can reasonably be interpreted as referring to the CI laminectomy and partial C2 laminectomy for decompression Anders underwent for treatment of his Chiari I malformation in June 2010.[7] (Tr. 17, 20, 21, 205-

---

[6] After the date of last insured, on January 20, 2011, Anders reported "a little bit of drawing up of his right hand, " (tr. 290), and in November 2011 reported some drawing sensations in his right hand and some trouble writing, (tr. 376). These reports, especially the November 2011 report well after the expiration of Anders' insured status, do not conflict with the finding Anders' symptoms improved after the June 28, 2010 procedure.

[7] Substantial evidence supports the ALJ's conclusion Anders' symptoms improved following this procedure. (Tr. 21, 415, 416, 417). On July 12, 2010, Anders followed-up with Dr. Joel D. Pickett after his surgical decompression for his Chiari I malformation. (Tr. 21, 417). Anders stated the right-sided radicular pain he was experiencing (before surgery) had completely resolved, and he was ambulating without difficulty. (Tr. 21, 417). Anders underwent an MRI of his cervical spine that revealed his cervicomedullary junction was well decompressed and the proximal syrinx had decreased in size. (Tr. 21, 416). Dr. Pickett noted he was quite pleased with the outcome radiographically. (Tr. 21, 416). On August 25, 2010, Dr. Pickett noted Anders was doing "quite well," he was neurologically intact, and his headaches and pain were completely resolved. (Tr. 21, 415). Anders' gait and station were normal, and he no longer has signs of spasticity that he had before surgery. (Tr. 21, 415). Dr. Pickett reported Anders' MRI was "improved as well." (Tr. 21, 415).

06, 207-08, 249-31). Even assuming the ALJ was referring to the 2003 microlaminectomy, reviewing the record as a whole, the ALJ's assessment Anders' condition improved after the laminectomy would not be against the weight of evidence, even considering the "flare-up" in late November 2009.

Regarding the severity of Anders' condition, the ALJ again found Anders' testimony only *partially* credible and pointed out Dr. Carter's treatment records revealed no neurological defects other than a "little tremor" in Anders' right upper extremity. (Tr. 21, 380). The evidence of a "little tremor" was noted in the records from *after* the date of last insured. (Tr. 376, 380). The ALJ repeatedly noted Anders was fairly stable on his medication and recognized Dr. Carter's keeping Anders on course with his medication regimen, although Robaxin was added in October 2010. (Tr. 21, 291, 293, 295, 297, 299, 301, 307). The ALJ observed Anders' conservative treatment, primarily with medication and epidural injections.[8]  (Tr. 21).

The ALJ also noted Dr. Carter's records did not support Anders' allegations of side effects. (Tr. 20, 40). During Anders' treatment with Dr. Carter during the relevant period, no side effects were noted. (Tr. 20, 290-304). Anders' argument the court should ignore the doctor's indication of no side effects in the medical records because Anders' medicine could reasonably cause side effects is without merit. (*See* doc. 11 at 6).

Anders also argues the ALJ improperly found that "none of [Anders'] treating and/or examining physicians ever opined that [he] was unable to work." (Doc. 11 at 6-7; tr. 20). Although Anders points to Dr. Carter's July 21, 2011 statement that "with the combination of [Anders'] back pain is chronic [sic], medication needs, and his neurologic issues that [Anders] is

---

[8] Anders' delay or refusal to receive a couple of epidural injections while figuring out financing does not change this result. Assuming he received these as recommended, the ALJ's characterization of Anders' treatment would not change.

12

probably not a candidate to return to work. I have encouraged him to continue seeking disability." (Tr. 381). Not only was this statement made seven months after Anders' date of last insured, it is an opinion on whether Anders is disabled, an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d); Social Security Ruling (SSR) 96-5p, 1996 WL 374183, *1-6 (1996); *Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011). Not only was there no need for the ALJ to discuss this statement because it was well after the date of last insured, but the evidence from the relevant time period (thoroughly discussed above) does not support this opinion. *See* 20 C.F.R. § 404.1527(c)(2)-(4), *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832-33 (11th Cir. 2011) ("Where the medical record contain[s] a retrospective diagnosis, . . . we affirm only when that opinion was consistent with pre-insured-date medical evidence.").

The ALJ also discussed Anders' aneurysm and properly determined the objective medical evidence did not support Anders' allegations of disabling symptoms. (Tr. 21). Specifically, the ALJ found there was no evidence Anders' aneurysm prevented him from functioning. (*Id.*). The ALJ acknowledged Anders had an aneurysm; however, evidence showed it had not changed in size. (Tr. 21, 199). On October 26, 2010, Anders reported to Huntsville Hospital for a CT angiogram that revealed re-demonstration of Right MCA aneurysm, unchanged during the study interval, and no acute disease. (Tr. 21, 199, 439). Additionally, after Anders' date of last insured, Anders underwent a CT scan on July 21, 2011, that revealed no growth of the aneurysm. (Tr. 21, 380, 438). On a follow-up with Dr. Pickett on November 17, 2010, Dr. Pickett noted Anders was not having any symptoms. (Tr. 21, 413). It was not until June 2012, well after the date of last insured, that it was noted Anders had a minimal increase in his aneurysm. (Tr. 21, 399, 405-06, 413).

The ALJ found Anders' pain could cause functional limitations; however, the ALJ

considered those limitations and included them within the RFC, a limited range of light work. (Tr. 13, 20). The ALJ found Anders' allegations not credible to the extent they were inconsistent with his ability to perform this specific limited range of light work. (Tr. 13). Thus, the ALJ credited Anders with significant limitations in his ability to work. The ALJ's assessment of Anders' subjective allegations of pain is supported by substantial evidence. Anders has failed to prove he could not perform this limited range of light work, and substantial evidence supports the ALJ's findings and his conclusion Anders was not disabled at any time through the date of last insured. Simply put, the ALJ did not mischaracterize the evidence as Anders suggests.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED** and this action is due to be **DISMISSED WITH PREJUDICE.**

A separate order will be entered.

DONE this 15th day of January 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE